The next case on for argument is Grynberg v. U.S. Department of Justice. This is a case of the U.S. Department of Justice v. U.S. Department of Justice. You're not breaking it. If you do, we'll give you a bill. Fair enough. All right. Good morning, Mr. Abrams. Good morning. May this please this honorable court. This appeal raises two primary issues. The first issue is whether documents subpoenaed by the prosecution pursuant to a grand jury investigation are categorically exempt from a FOIA production, an otherwise legitimate FOIA production, when there has been no showing that disclosure of the documents would tend to reveal any grand jury secrets, and there has been no showing that any of the documents actually made its way into the grand jury room. You're probably not aware, you're too young, but back in the old days when several of us were practicing, the challenging grand jury process was de rigueur by defense counsel sort of early to mid-eighties. A number of U.S. attorney's offices, I think certainly in this circuit, even though the grand jury material that was subpoenaed ultimately ended up in the hands of an agent who was helping the government do the invest— or who was doing the investigation with the U.S. attorney's office, were presented back to the grand jury always, as a matter of course, to avoid these sort of side attacks on abuse of the grand jury process. So do you have any evidence that this wasn't returned to the grand jury in an appropriate form, or that the grand jury authorized the agent who served the subpoena to receive the documents on its behalf, which essentially I would say—I don't know, I'm not speaking for my colleagues— as a mechanism that the grand jury approved for receiving these materials? No, I mean—all right, so once documents are produced in front of a grand jury, doesn't that in and of itself disclose in some way, however small, what it is that the grand jury is looking into? If that's even a question that we address in these terms when we're told through— you can argue about whether the government's disclosure was adequate in response to your FOIA request. When we are told these are grand jury materials. Well, no, I don't think so, because even though they were subpoenaed by the prosecution, there's no evidence that the grand jury itself actually got the documents. So subpoenas can be very broad in nature, and they can yield boxes and boxes of documents, and how many documents actually make it to the grand jury room? Well, one answer is all of them, because very often the boxes are brought to the grand jury room. But going back a step before that, the point is the grand jury subpoenaed them. The subpoena is issued in the name of the grand jury. So the very fact that these documents are in the possession of the government now as a result of grand jury subpoenas, the disclosure of what they subpoenaed tells you what the grand jury was looking at. I respectfully disagree with that. I think if you look at Judge Wood's decision in the Manco case, if you look at United States v. Phillips in the Eleventh Circuit, the mere fact that a document is subpoenaed by the grand jury does not put that document into the protection of Rule 6E. Rule 6E, folks? The mere fact that a document has been subpoenaed by a grand jury does not exempt it from disclosure when the subpoena is addressed, for example, when the FOIA request goes to some other agency that has those documents or something like that. But here, as I understand it, the FOIA request is essentially for the documents that came to the grand jury, right? I mean, that's what you're asking for. Well, that's part of what we're asking for. We're asking for bank records as well, regardless of how the government received those records, so it's not just the grand jury. But the bank records came from the Mutual Legal Assistance Treaty, as I understand the government's affidavit. Well, the bank records may have very well come from the grand jury as well. Yeah, but they're not relying on that. The bank records, as I understand it, are Swiss bank records that were obtained from the Swiss government pursuant to the treaty, and I thought that's what they were relying on. Right. My point is that our request for the grand jury is the BP documents, I thought. Well, we're asking for two different things. We asked for bank records. We didn't ask for Swiss bank records. We asked for bank records. They may be Swiss bank records. They may be non-Swiss bank records. But we asked for bank records, and it's unclear from the record whether all of the bank records are from Switzerland or whether some of those bank records may have been found pursuant to the subpoena. But either way, again, the fact that there was a subpoena is not a secret. We knew that. That's why we made the request. Yes, but you see, that's the circularity of it. We know there was a subpoena. That has become public. Now you say, show us what you got with your subpoena, right? That's what's disclosing the grand jury's investigation, isn't it? We don't believe so because ultimately the prosecutor is going to show the grand jury a small subset of those documents. There's been no evidence that the grand jury had free access to these documents or that they reviewed any of the documents. If some of the documents have grand jury stickers, there may very well be a basis to say, hey, we're not going to, you know, we're not going to. The documents are only in the government's possession by virtue of the grand jury having ordered somebody or some entity to produce them. Period. End of story. The government can't just go out, sorry, with respect to documents subpoenaed by the grand jury, the government can't just go out and grab them. I mean, they could use a search warrant, we'd be having a different conversation. They could use an administrative warrant, perhaps, we'd be having a different conversation. But when they are produced pursuant to the grand jury, my view, we can have arguments and maybe we'll have further discussion and some written opinion about this. When they're produced by, pursuant to a grand jury subpoena, whether they are actually brought in as boxes or whether the grand jury has authorized the agent to pick them up and do something else with them, they are their de jure in front of the grand jury. Okay. Do you have case law that says that's wrong? Well, I think the Phillips case, I think the Manco case, and I frankly, I think that the interstate dress case, this court's case from 1960, it says it has to make it to the grand jury room and there's been no showing. I will tell you, this is totally extra record. Every document that I subpoenaed after grand jury processes were attacked, were brought into the grand jury in a box, and the grand jury was told these are the documents. I did not put a label on every one. I got the grand jury's authorization to go and give them to an agent, and then we brought back other documents for them to consider at some later point in time. Well, there's no evidence that that happened here. I can't speak to anything other than the record here. De facto or de jure, I suggest that that may be a problem. What's stopping you from going to the source and saying give us those documents, subpoenaing those documents? Well, nothing's stopping us. We're endeavoring to do that. All right. So isn't that your answer? We're here on a... I appreciate that. I know, I know. It's not the answer to the FOIA question. Right. But isn't that the answer to what it is you want to get? Well, there is certainly a proceeding where that may be happening, but... Doesn't your case law tell you that the entity whom you are subpoenaing for those documents, or seeking to get production of those documents from, can't say, well, we produced these in front of the grand jury, therefore we don't have to produce them? Well, you're preaching to the choir on that one. Thank you, Judge. Well, good. Maybe we'll see you again. You've reserved some time for rebuttal. Ms. Bretz. Good morning. May it please the Court. My name is Emily Bretz. I represent the United States Department of Justice. As Plaintiff's Counsel mentioned, we are here because of two categories of documents, documents that were obtained via grand jury subpoena, and documents that were obtained via the MLAT, the Mutual Legal Assistance Treaty with Switzerland. The latter category of documents is protected both via the treaty and Exemption 3 and Exemption 7D. I have a question about the second piece. The cover letters from the Swiss authorities loom large in the briefing, but we don't have the Swiss cover letters. Why aren't the Swiss cover letters in the record? The agency did not want to produce them. They were concerned about the secrecy concerns based on the Swiss production of documents. When they came together via Switzerland under the MLAT, there was concern that they might reveal and reveal their contents, which are protected by the MLAT. So in the declaration, in the Ford Declaration, we represent the exact contents of the letters that are typically transmitted when Switzerland sends materials to the United States and a representation in the Hodge Declaration that those letters were found in this case. It's a little awkward because we sort of have to take the word of the person in the declaration, what the letter says when the letters actually exist. Understanding that the letters might contain some sensitive information, one wonders why they couldn't be redacted to eliminate the sensitive information, but the expectations about confidentiality, which is not a secret, that could be presumably laid out before us. And I understand it's laid out in the declaration, but generally speaking, when there's a document that contains the language that's at issue, we get to see the document. We don't have to take someone's word for what's in the document. So it creates some awkwardness, and it seems to me, you know, the issue about sensitivity of information in the cover letters, fine, the sensitive information could be redacted. The language about we expect confidentiality, that's not sensitive or secret, and we could see that rather than having to rely on a declaration. Understood, Your Honor. We do believe that, though, the declarations are afforded a presumption of good faith, which I know my opposing counsel takes opposition to, but we don't believe that there's been a presumption of good faith that's been rebutted. I can continue to talk about the MLAT materials, if Your Honors prefer, or go back to the grand jury materials. But with respect to the MLAT materials, sticking with those for a moment, we do believe that they qualify under Exemption 3 as a treaty. It has the status of statutory law and thus qualifies under Exemption 3. It also qualifies as a withholding statute. It identifies particular criteria for withholding and matters to be withheld. With respect to those particular matters, those are identified in Article 5 and Article 15, which set forth the limitations on the use of the information as well as the confidentiality that is understood when the Swiss transmit documents to the United States and vice versa. That confidentiality assumption is also the underpinning for our argument with regard to 7D, which Switzerland is a confidential source, and, again, even though the identity of Switzerland is known, that does not render the documents themselves to not be confidential. They were provided with the understanding that they would only be used for the specific law enforcement purpose for which they were provided and that they would be kept confidential. And that's also underscored, going back to Exemption 3, and I apologize, the arguments do dovetail a bit, but with regard to Exemption 3, those cover letters that Judge Gardefi mentioned, they do indicate that disclosure is only for the purpose of Article 5, for that specific law enforcement purpose, and that disclosure under FOIA would violate Swiss law. The district court only relied on Exemption 3, right? Correct. But you are arguing that — did you argue below that both exemptions applied to you? We did. The district court did not reach Exemption 7D. Thank you. And turning back to the grand jury materials, we believe that Rule 6e, the underpinnings of the rule, are to protect the secrecy of the grand jury. That's both to shield the investigation as well as information about the strategy and direction of the investigation. Here, Grinberg seeks specifically records that were subpoenaed by the grand jury. Those in and of themselves reveal, by virtue of the fact that they were subpoenaed by the grand jury, reveal the nature and direction, regardless of whether they were shown to the grand jury or not. And this Court has held that matters beyond what occur in the grand jury room do constitute — can constitute the Rule 6e materials. Well, especially since you're using — your only authority for getting those materials is the grand jury subpoena. Correct. But in this Court's other decisions, Interstate, DiLeo, and John Doe, there was an independent legal right of access, and the documents existed in the government's possession, completely separate and apart from the grand jury investigation. Here, the only reason — You couldn't interpose the grand jury Rule 6e as a — as a reason for not disclosing them. I'm sorry? So in those cases, you couldn't interpose Rule 6e as a reason for non-disclosure. Correct. And as in Interstate and the other subsequent cases I've held repeatedly, that you either need consent from the document's owner — the owner of the documents is the one who holds the legal right to the documents, and in this case, the legal right of the document owner is BP. You either need that or a court order, and that would be to make the considerations of Rule 6e known to the Court. If Your Honor has no further questions, I think the rest of — All right. Thank you. We ask you to affirm the decision of the District Court. Thank you. Anything further? Yes, Your Honor. Just on the MLAT point, the Swiss MLAT has Article 15, which calls for secrecy in certain specified places, but only if the requested state, here Switzerland, makes their request pursuant to Paragraph 2 of Article 10. Now, time doesn't permit me to go into that, but there's no indication, even if we take the double hearsay declaration of what these transmittal letters say, there's no indication that the Swiss requests for confidentiality were pursuant to Paragraph 2 of Article 10. And on the 7d argument concerning confidential source, the Campbell case, which is in our brief, says that the government has to show that there was either an explicit promise of confidential treatment or an implied promise. The explicit fails because the government says they're relying on an implicit understanding, and the implicit fails simply because they didn't follow the MLAT. The MLAT made it very clear how the Swiss could make an application for confidential treatment. There's no evidence that that happened here, and for that reason, the exemption based on the Swiss MLAT does not apply, and this Court should reverse on that basis alone. I had a question about Article 10, Paragraph 2, and my question is, is there any evidence in the record regarding whether the requested documents, quote, affect a person who, according to the request, appears not to be connected in any way with the offense, which is the basis of that request? I'm quoting that language from Article 10, Paragraph 2. Your Honor, there's no evidence whatsoever, and that's part of the problem. There's no evidence in the record that speaks to that issue. Thank you. Thank you both. We'll reserve decision in this case.